UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Docket No.: 13 CV 3468

- - - - - - - - - - - - - - - - - - - - - - - - - -- - - - - - - - -X

RONALD BOZEMAN and DORIS BOZEMAN

Hon. Sandra L. Townes
M.J. Vera M. Scanlon

                         Plaintiff,

                -against-

VERIFIED AMENDED
COMPLAINT

THE CITY OF NEW YORK, DETECTIVE JOHN O.
BOLDEN, DETECTIVE WILLIAM A. BUSH,
DETECTIVE JOHN DOE # 1, DETECTIVE JOHN
DOE # 2, JOHN DOES, and RICHARD ROES,

                         Defendant(s).

- - - - - - - - - - - - - - - - - - - - - - - - -- - - - - - - - X

       Plaintiffs, RONALD BOZEMAN, and his Wife, DORIS BOZEMAN, by their

attorneys Tolmage Peskin Harris & Falick complaining of the Defendants The City of New

York (hereinafter referred to as "CITY"), Detective John O. Bolden (hereinafter referred to as

"BOLDEN"), Detective William A. Bush (hereinafter referred to as "BUSH"), DETECTIVE

JOHN DOE # 1, DETECTIVE JOHN DOE # 2, JOHN DOES, and RICHARD ROES, alleges,

upon information and belief,  as follows:

## NATURE OF THE CASE

    1.    This is a civil action pursuant to 42 U.S.C. §1983 and 1988 and *Monell v*

*Dept. Of Social Services,* 436 U.S. 658 (1978), seeking monetary damages for the plaintiff,

RONALD BOZEMAN,  due to his wrongful arrest, prosecution and imprisonment for one

year and five days caused by a pattern of  pervasive misconduct of members of the New

York City Police Department ("NYPD") and Kings County District Attorney's Office

("KCDAO").

    2.    Plaintiff, RONALD BOZEMAN,  was arrested on December 7, 2011 and

charged with, *inter alia,* Kidnaping in the First Degree (a Class A-1 Felony) and Robbery in

the First Degree.

1

3.     On December 12, 2011 plaintiff, RONALD BOZEMAN, was indicted under Indictment Number 10407/2011.

4.     On December 12, 2012 after spending one year and five days behind bars, the charges against him were dismissed in their entirety.  During this entire period of time he was on remand status, that is,  held without bail.

5.     Defendants are liable to the plaintiff, RONALD BOZEMAN, for the harms they caused to him stemming from, *inter alia*, their pervasive malfeasance during the course of the investigation into the robbery for which said plaintiff was wrongfully arrested and prosecuted, and for their willful, deliberate and contemptuous pattern of generating false evidence against individuals, including the said plaintiff herein, and for ignoring exculpatory evidence, and the withholding of exculpatory evidence from individuals, including the said plaintiff herein.

## JURISDICTION

6.     This action is brought pursuant to the Constitution of the United States, including its Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983. Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

7.     The plaintiffs further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

8.     Plaintiffs demand a trial by jury on each and every one of his claims as pleaded herein.

2

## VENUE

9.      Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## THE PARTIES

10.     At all times hereinafter mentioned the defendant CITY was and still is a Municipal Corporation, organized and existing under and pursuant to the laws of the State of New York.  It is authorized by law to maintain a Police Department, and to maintain District Attorneys' Offices in each of its five boroughs, including KCDAO for Kings County, which act as its agents in the area of law enforcement to members of the public, and for which it is ultimately responsible.  Defendant CITY assumes the risks incidental to the maintenance of a police force and KCDAO, and the employment of police officers, prosecutors, and other employees of those agencies, as said risk attaches to the public consumers of the services provided by the New York City Police Department.

11.     Defendants BOLDEN, BUSH, DETECTIVE JOHN DOE # 1, DETECTIVE JOHN DOE # 2,  and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of defendant CITY and/or the NYPD a municipal agency of defendant CITY.  Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant CITY, were acting for, and on behalf of, and with the power and authority vested in them by defendant CITY and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants BOLDEN, BUSH, DETECTIVE JOHN DOE # 1, DETECTIVE JOHN DOE # 2, and JOHN DOES are sued individually.

12.     Defendants RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of defendant

3

CITY and/or the NYPD, responsible for the training, retention, supervision, discipline and control of police officers, detectives, and other police personnel under their command. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant CITY, were acting for, and on behalf of, and with the power and authority vested in them by defendant CITY and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants RICHARD ROES are sued individually.

## STATEMENT OF FACTS

13.  Shortly after 11:00 A.M. on August 26, 2011 Ahmed Awawdeh (hereinafter referred to as "Awawdeh") and a cousin Shady Widdi, (hereinafter referred to as "Widdi") left an HSBC bank located in the County of Kings, City and State of New York with a plastic bag containing approximately $9,000 in cash.

14.  Upon exiting, Awawdeh was approached by a black male (hereinafter referred to as "Perp 1") that he described as 6'2" tall, and ordered into a Cadillac, owned by his cousin Widdi,  at gun point.

15.  Once in the car he meets a second black male (hereinafter referred to as "Perp 2") and is forced to turn over his money to Perp 2, who flees the scene.

16.  Thereafter, Perp 1 removes Awawdeh from the car and, with a gun in his rib cage, Awawdeh is forced to walk down the street and is told to turn away and not look back or he will be shot.

17.  Widdi calls 911 and states that they have been robbed by "two guys holding a gun."  He describes Perp 1 as wearing a blue hoody, and Perp 2 as wearing a white shirt.

18.   Detective BOLDEN[1], DETECTIVE JOHN DOE # 1, DETECTIVE JOHN DOE # 2, and JOHN DOES police officers assigned to the case interviewed a purported witness who claims the incident happened at 10:30 AM and describes Perp 1 as dressed all in blue about 5'10" 40-45 years old  and "slim," and that he looked like a "crack addict."

19.   Detective BOLDEN[1], DETECTIVE JOHN DOE # 1, DETECTIVE JOHN DOE # 2 and JOHN DOES Police Officers also interviewed a second witness who described seeing Awawdeh walking down the street with a male black 40-45 year of age, dressed all in blue with dark skin and  "looking like a crack addict."

20.   A cell phone was recovered from the back seat of the car which turns out to be owned by Edicy "Slim" Reedy (hereinafter referred to as "SLIM").

21.   Found in the Cadillac, on the front seat of the vehicle, was a blue duffle type bag with a white cloth inside.

22.   Members of the NYPD identify DNA on the handle of the bag found in the car as likely to belong to SLIM.

23.   SLIM is identified as a Male Black, 6'2", weighing 170 pounds.

24.   Members of the NYPD identify DNA on the cell phone found in the car as likely to belong to Gregory Johnson (hereinafter referred to as "Johnson").

25.   In addition, police investigators took DNA swabs and dusted for fingerprints from the door handles based on Awawdeh's statement that PERP 1 had entered and exited the vehicle.

26.   No fingerprints matching the plaintiff, RONALD BOZEMAN,  were found on the vehicle or on any items found in the car.

27.   Shortly after the robbery, based upon the description provided by Awawdeh a NYPD artist creates a sketch of Perp 1, now described as "Black Male 6'1" to 6'3,"

---

1.  Bolden is identified in this complaint as a Detective, however, he may be a plainclothes Police Officer doing the work of a Detective.

approx. 180-190 pounds wearing all blue."

28.     SLIM should have been considered the primary suspect from the beginning, and the focus of the NYPD detectives' energies, due to the presence of his cell phone in the back seat of the car, and his closeness in appearance to the description of Perp 1.

29.     On October 12, 2011 BOLDEN shows Awawdeh a photo array in which Awawdeh identifies photograph #5 as Perp 1.  The Photo is of an individual identified as Anthony Valdez, a male Hispanic 5'11", 192 pounds, age 41 in a photo taken 10 years prior.

30.     In violation of NYPD guidelines, rules and regulations, BOLDEN exhibits with the array  a NYPD form which clearly states that **"THIS FORM MUST NOT BE SHOWN TO WITNESS."**  In addition BOLDEN directs Awawdeh to sign the form as the "administrator."

31.     Valdez is subsequently arrested but the arrest is voided for lack of probable cause.

32.     From this initial false identification of Valdez as Perp 1, problems concerning Awawdeh's credibility and the reliability of any identification(s) made by him should have been apparent to a reasonably competent police officer.

33.     On November 16, 2011, members of the NYPD identify DNA on a white rag found <u>inside</u> the bag found in the vehicle as *likely* to belong to the Plaintiff RONALD BOZEMAN.

34.     The DNA on the white rag that was inside the bag that was in the front seat of the vehicle was the only physical evidence of any sort relating to the robbery that had any potential connection at all with plaintiff.

35.     A reasonably competent police detective should have recognized that the presence of plaintiff, RONALD BOZEMAN'S DNA on the white rag that was inside the bag

that was in the front seat of the vehicle was of little to no probative value, as all it would tend to indicate was that at some point the plaintiff had touched a rag that was inside a bag that the two actual perpetrators of the robbery had brought with them and left inside the vehicle along with a cell phone (SLIM's cell phone, with Johnson's DNA on it) – and that the presence of this plaintiff's DNA on the rag inside the bag does not indicate that this plaintiff had been in the vehicle.

36.    On November 16, 2011 BOLDEN issues a NYPD report classifying plaintiff, RONALD BOZEMAN as a "Suspect," but not authorizing that he be detained.  Plaintiff is now identified as the third "suspect" in a two man robbery, SLIM and Valdez being the other two.

37.    Johnson - whose DNA is found on the cell phone in the car - is not listed at this time as a suspect.

38.    On November 18, 2011 Plaintiff, RONALD BOZEMAN,  is now listed by BOLDEN on a NYPD "I-Card" as being WANTED.

39.    Plaintiff, RONALD BOZEMAN, is described as 64 years old, 5'10" and 185 pounds.  He has a record of narcotic and robbery convictions.

40.    On December 7, 2011 Plaintiff, RONALD BOZEMAN, learns that he is a "suspect" and voluntarily meets with the police on the street at a pre-arranged time.  He is transported to the 84th precinct and is handcuffed to a bench, and placed in a holding cell.

41.    Plaintiff, RONALD BOZEMAN,  is Mirandized, and he denies involvement in the robbery.

42.    Plaintiff,  RONALD BOZEMAN,  is questioned at length about SLIM and is shown a photo of SLIM.

43.    Plaintiff, RONALD BOZEMAN,  is then put into a clearly impermissibly suggestive lineup.

44.    The lineup is arranged and conducted in violation of NYPD guidelines, rules

and regulations, and otherwise in violation of the Constitutions of the United States and of the State of New York.

45.   The lineup violated NYPD guidelines, rules and regulations in that it consisted of 5 individuals, not 6 participants (i.e., only 4 fillers, rather than 5).  *See*, NYPD Patrol Guide 208-24, requiring that all suspects be placed in a lineup with "at least five other persons" in order to ensure "fair and proper proceedings."

46.   The fillers in the lineup ranged in age from 37-48 years old.  Plaintiff, RONALD BOZEMAN,  was 64 years old.

47.   The fillers in the lineup ranged from 5'9" TO 6'0" and from 155 pounds to 220 pounds.  Plaintiff was 5'10" and 230 pounds.

48.   The fillers thus ranged from 16 to 27 years younger than plaintiff, and ranged in weight from 20 to 65 pounds less than plaintiff.

49.   BOLDEN falsely claimed that he read a standard lineup form to the witnesses "verbatim," indicating that the lineup consisted of 6 individuals.

50.   BOLDEN had both Awawdeh and Widdi initial the forms, and thus had them falsely claim that they were read the forms verbatim, and that there were 6 people in the lineups.

51.   BOLDEN never asked the witness Awawdeh what role the Plaintiff supposedly played in the robbery, nor did Awawdeh state the role supposedly played by the plaintiff in the robbery.

52.   Immediately after Awawdeh identified the Plaintiff, BOLDEN had the witness Widdi view the same lineup.  There was no attempt to rearrange the order of the participants.

53.   In direct violation of the guidelines, rules and regulations of the NYPD, BOLDEN allowed the witnesses to have contact and to see one another between the

viewings.  During the meeting Widdi tells Awawdeh in Arabic to "pick number 3".

54.    In moving to dismiss the charges, A.D.A. Jeffrey Levitt, a Bureau Chief in KCDAO, affirmed that there was impermissible contact between the two identifying witnesses.

55.    On January 10, 2012, BOLDEN prepared a second photo array, this time containing the photo of suspect Johnson, and showed it to Awawdeh.

56.    Awawdeh now identified Johnson from the photo array as the Perp 1 who robbed him (the same Perp 1 who he had said was plaintiff).

57.    The photo is designated "5."  However, Awawdeh signs off on the photo being "3."

58.    The documents from the January 10, 2012 photo array folder were, on information and belief, nothing more than a cut and paste of the earlier Valdez photo array (where the suspect was designated as "3").

59.    Plaintiff's case was presented to a Grand Jury, by the KCDAO which indicted plaintiff as the occupant of the front passenger seat of the car into which Awawdeh was pushed.

60.    Approximately 6 weeks later the KCDAO  represented by the same Assistant District Attorney also presented Gregory Johnson's case to a Grand Jury which indicted Johnson as the occupant of the front passenger seat of the car into which Awawdeh was pushed.

61.    Thus, within the space of six weeks, KCDAO indicted two men for supposedly being the same person who committed the same crime.

62.    Johnson was arrested in his home on January 24, 2012, and the arrest reports list two associated arrests (Valdez and the plaintiff).  There are now three people in custody for a robbery that from the beginning was reported as involving two people.

63.    In a span of less than three months, from October 12, 2011 to January 2012,

BOLDEN and/or BUSH name four individuals [Valdez, Reedy, Johnson and Ronald Bozeman the plaintiff herein] as perpetrators of the two man robbery based upon the identifications by Awawdeh and Widdi.

64.   Valdez, Reedy, Johnson and Bozeman bear no physical resemblance to each other or to the descriptions given by Awawdeh and Widdi except for Reedy who is a perfect match.

65.   Two weeks after identifying Johnson in a photo array, Awawdeh is now asked by the police to view a lineup containing Johnson.

66.   Awawdeh, after requesting that the individual designated "4" state "where is the gun," [2] identifies Johnson (designated "4") as the Perp 1 front seat robber.

67.   Later that day Widdi, the owner of the Cadillac in which the robbery took place identifies Johson in the lineup as the "guy in the jeep."

68.   These, and other, glaring inconsistencies should have alerted a police detective of reasonable competence to the fact that there were profound issues with the credibility and reliability of Awawdeh and Widdi.

69.   BOLDEN, BUSH, and the JOHN DOES defendants were not interested in whether plaintiff was actually one of the two perpetrators of the robbery.

70.    BOLDEN, BUSH, and the JOHN DOES defendants, throughout the course of the robbery investigation, were simply interested in making an easy arrest and closing the case.

71.    BOLDEN, BUSH, and the JOHN DOES defendants made numerous requests on DD-5 (Complaint Informational Follow-Up) reports to close the case.

72.   For example, on November 27, 2011, plaintiff and SLIM are identified on a

---

[2] To this point all of the official NYPD documents have "Awawdeh and Widdi as stating that the plaintiff used this phrase.

DD-5 by BOLDEN as wanted perpetrators, and BOLDEN submitted the case for closing pending the arrest (the desire for which is indicated within the Detective Squad through the issuance of "I-Cards") of plaintiff and SLIM.

73.    Plaintiff, as noted above, was arrested on December 7, 2011, but SLIM could not be found by BOLDEN and his colleagues.

74.    On December 30, 2011 an I-Card was issued for Johnson due to the "positive DNA hit" for him found through the DNA tests conducted by members of the NYPD.

75.    On January 12, 2012 Johnson and SLIM (plaintiff has already been in custody for over a month) are identified on a DD-5 by BOLDEN as wanted perpetrators, and BOLDEN submitted the case for closing pending the arrest of Johnson and SLIM.

76.    On January 24, 2012 a criminal complaint against Johnson is sworn to by Detective BUSH, stating, *inter alia*, that Johnson was in the back seat of the car, and that the plaintiff sat in the front passenger seat and "repeatedly struck Awawdeh with a firearm."

77.    On January 30, 2012 Awawdeh testified in the Grand Jury against Johnson, and stated that Johnson was the front seat passenger and that the plaintiff was the back seat passenger.

78.    During the same Grand Jury appearance Awawdeh testified that at the January 24, 2012 lineup he told the police that Johnson was the guy who hit him and put a gun to his waist.

79.    Widdi then testified before the same Grand Jury and he too now stated that Johnson and not the plaintiff was in the front passenger seat. He further testified that at the lineup he told the police that Johnson was the guy that grabbed Awawdeh and threw Awawdeh into the car with the gun.

80.    Widdi further testified that *both men* then escorted Awawdeh down the street.

81.    BOLDEN, BUSH, and their JOHN DOES colleagues involved with the investigation exhibited a deliberate indifference to the rights of the plaintiff by ignoring the

contradictory statements made by the witnesses against the plaintiff.

82.   BUSH falsely swore to the contents of the complaint against Johnson.

83.   By January 31, 2012 there exists a sworn complaint signed by BUSH against Johnson and sworn Grand Jury testimony of Awawdeh and Widdi that are irreconcilably inconsistent, to wit as to the location of the Plaintiff and Johnson in the front seat of the car.

84.   SLIM was eventually arrested as a suspect in connection with the robbery on October 14, 2012.

85.   The KCDAO declined to prosecute SLIM.

86.   The KCDAO declined to prosecute SLIM despite significant evidence indicating that SLIM was Perp 1, since plaintiff and Johnson had already been indicted for the robbery, and because of the numerous problems with the botched investigation into the robbery, and the botched prosecutions of plaintiff and Johnson by KCDAO.

87.   In their official document declining prosecution, dated October 5, 2012 the KCDAO states, their reasoning as,

> 2 individuals already identified, arrested and charged as defendants who actually committed the robbery. ***No evidence that any third person physically participated in the actual robbery. No evidence at this moment to show that the defendant [Edicy Reedy a/k/a SLIM] was present at the scene or involved in this incident beyond deft's cell phone being found in the car and a bag with deft's DNA found in the car. Both items having been brought into the car by either Bozeman or Johnson...***[emphasis added]

88.   In addition to the malfeasance by BOLDEN, BUSH, and the JOHN DOES NYPD Detectives, there were also numerous and egregious *Brady* violations and other examples of prosecutorial misconduct, by the KCDAO during the course of the year-long prosecution of plaintiff.

89.   For example, in the six months between June 14, 2012 and December 12, 2012, plaintiff's criminal defense attorney made approximately 12 separate written or oral

requests for specific *Brady* material to the KCDAO, which produced no response

continuing the pattern of the KCDAO exhibiting a deliberate indifference to the rights of

criminal defendants, including this plaintiff through, *inter alia*, the systematic withholding

of *Brady* material.

90.     The KCDAO has a long,  significant and now notorious history of

indifference to *Brady* violations and other prosecutorial misconduct by its employees.  *See*,

e.g., *Collins v. City of New York*, 2013 U.S. Dist. LEXIS 21199 at  35-36 (E.D.N.Y. 2013),

("*[D]espite scores of cases involving Brady violations and other prosecutorial misconduct,*

*[Kings County District Attorney] Hynes has never disciplined an assistant for such*

*misconduct, even after the violations were confirmed by court decisions.*"). See attached as

Exhibit "A" a list of cases finding that the KCDAO has wrongfully failed to disclose

evidence actually or potentially favorable to the defense.

## FIRST CAUSE OF ACTION
## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

91.     The plaintiffs incorporate by reference the allegations set forth in all

preceding paragraphs as if fully set forth herein.

92.     By their conduct and actions in falsely arresting, maliciously prosecuting,

violating the rights to due process of, inflicting emotional distress upon, failing to intercede

on behalf of, and fabricating a false account and /or evidence regarding, plaintiff,

defendants DETECTIVE JOHN BOLDEN, DETECTIVE WILLIAM A. BUSH, DETECTIVE

JOHN DOE # 1, DETECTIVE JOHN DOE # 2, and JOHN DOES, acting under color of law

and without lawful justification, intentionally, maliciously, and with a deliberate

indifference to or a reckless disregard for the natural and probable consequences of their

acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed

under 42 U.S.C. §1983 and the United States Constitution, including its Fourth and

Fourteenth amendments.

93.    As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, including but not limited to counsel fees for a criminal defense attorney in the sum of $20,000,  and was otherwise damaged and injured.

## SECOND CAUSE OF ACTION
## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

94.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95.    By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers RICHARD ROES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its Fourth and Fourteenth amendments.

96.    As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## THIRD CAUSE OF ACTION
## MONELL/42 U.S.C. §1983: CLAIM AGAINST THE DEFENDANT CITY FOR ACTIONS OF THE NYPD

97.  The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

98.  The foregoing violations of the Plaintiff, RONALD BOZEMAN'S, constitutional rights and injuries were directly, foreseeably, proximately, and substantially caused by conduct, chargeable to the Defendant CITY, amounting to deliberate indifference to the

constitutional rights of persons, including the Plaintiff herein, who are investigated, arrested or prosecuted for alleged criminal activities.

99.  Prior to the Plaintiff, RONALD BOZEMAN'S, arrest, policy making officials at the NYPD, with deliberate indifference to the constitutional rights of the individuals suspected or accused of criminal activity, to the risk of arresting and  prosecuting innocent people, and to the right of all criminal suspects to due process, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision and discipline concerning:

A.  The determination of probable cause to make an arrest;

B.  The continuing duty of police investigators to preserve and to make timely disclosure to the District Attorney, during criminal investigations and prosecutions, of all material evidence or information, *"Brady"* material, favorable to a person suspected or accused of criminal conduct, including but not limited to evidence of innocence, evidence that an identifying witness is unreliable or lacks general credibility, evidence that a prosecution witness has made inconsistent statements about material facts, so that the District Attorney could comply with his constitutional obligation to disclose such information to the defense.

C.  Fair and impartial line ups and photo arrays free of suggestion and/or inference towards an accused.

100.  The aforementioned policymaking officials had the knowledge and notice alleged in the preceding paragraph based upon, among other circumstances:

A.  Judicial decisions directly criticizing the NYPD for failing to train and supervise officers in their *Brady* obligations and for failing to adopt adequate *Brady* disclosure policies, *see Carter v. Harrison,* 612 F. Supp. 749 (EDNY 1985) (McLaughlin, D.J., adopting the Report and Recommendation of then Magistrate Judge Shira A. Scheindlin) and putting the NYPD on notice that the CITY could be held liable for its failure to adequately train police officers and investigators regarding their obligations to provide

15

truthful testimony and to disclose evidence that factors criminal defendants under *Brady,*
*see Walker v City of New York*, 974 F. 2d 293 (2nd Cir. 1992) and *Carter v Harrison,*
*supra;*

B.  Formal Reports of the NYC Comptroller's Office and the Bar Association of the
City of New York criticizing the NYPD and the NYC Law Department for failing to follow
up substantial civil settlements for police misconduct with disciplinary and or other
remedial actions;

C.  The inherent obviousness of the need to train, supervise and discipline police
officers in such obligations to counteract the pressure on officers by their supervisors and
others and the powerful incentives they have to close cases and obtain arrests.

101.  Under the principles of municipal liability for federal civil rights violations, the
City's Police Commissioner (or his authorized delegates), has final responsibility for
training, instructing, supervising, and disciplining police personnel with respect to the
investigation and prosecution of criminal matters, including constitutional requirements
governing the interrogation of witnesses, the initiation of criminal prosecutions, and the
disclosure of *Brady* material.

102.  The Police Commissioner, personally and/or through his authorized delegates,
at all relevant times had final authority, and constitutes a City policymaker for whom the
City is liable, with respect to compliance by NYPD employees with the above mentioned
constitutional requirements.

103.  During all times material to this Compliant, the Police Commissioner owed a
duty to the public at large and to this Plaintiff in particular, which he knowingly and
intentionally breached, or to which he was deliberately indifferent, to implement policies,
procedures, customs, practices, training and discipline sufficient to prevent or deter

16

conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

104.  The aforesaid policies, prcedures, regulations, practices and/or customs of the CITY and the NYPD were collectively and individually a substantial factor in bringing about the aforesaid violations by the Individual Police Defendants of Plaintiff's rights under the Constitution and laws of the United States.

105.  By virtue of the foregoing, the City is liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his constitutional injuries.

**FOURTH CAUSE OF ACTION**
**(*MONELL*/42 U.S.C § CLAIM AGAINST DEFENDANT**
**THE CITY FOR ACTION OF THE KCDAO**

106.  The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

107.   At the time of Plaintiff's original prosecution , and continuing until the Court's dismissal of Plaintiff, RONALD BOZEMAN's case and his release from prison, District Attorney Charles J. Hynes, as the manager and chief administrator of the KCDAO, a City agency, maintained a policy, custom and/or practice of deliberate indifference to violations by his employees of the constitutional rights of individuals who were investigated and criminally prosecuted in Kings County, including, but not limited to, *Brady* violations, reliance on false or misleading evidence and argument at court proceedings, and covering up the same.

108.  The policy began with his induction as District Attorney in 1990 and has continued to this day.

109.  The policy permits, encourages, or acquiesces in the commission of, constitutional violations of the rights of suspects and defendants by prosecutors, detective-investigators, and NYPD detectives working with the KCDAO, particularly in high profile or serious cases where arrest and conviction is most desired by the Office.  The policy led

17

directly to the violations of Plaintiff's constitutional rights before his trial, his wrongful detention, and the subsequent cover-up of police and prosecutors' wrongdoing, which greatly prolonged Plaintiff's wrongful imprisonment and other damages.

110.   It was Hynes's policy to tolerate (and thereby encourage) violations of his Office's constitutional obligation to make timely disclosure to the defense of exculpatory or impeachment information known as *Brady* material.  His deliberate indifference to such violations created and "anything goes" atmosphere that caused such violations to continue, including in Plaintiff RONALD BOZEMAN's case.

111.   Hynes's prosecutors were permitted and/or encouraged to withhold evidence, as well as statements and evidence, tending to prove a defendant's innocense, unless they "believed" such evidence, thus depriving the defense of vital information, required to be disclosed under *Brady*, that was necessary to evaluate witnesses' credibility and defendant's guilt or innocence.

112.   While prosecutors were told in theory to comply with their *Brady* obligations, they were not told there would be any negative consequences to them if they failed to, and in fact there was none.

113.   Hynes had no employee handbook, manual, or other document setting forth any disciplinary process for such misconduct, or potential sanctions for them.

114.   Despite dozens of court decisions, 56 of which are listed in Exhibit "A", finding that prosecutors had wrongfully failed to disclose evidence actually or potentially favorable to the defense that should have been disclosed under *Brady, Rosario*, or statutorily-mandated discovery procedures, or otherwise had engaged in conduct that

mislead the court, jury, and/or defense, none of the prosecutors involved were disciplined.[3]
They were not fired or suspended, fined, or demoted.

115.   The foregoing violations of Plaintiff's federal constitutional rights and resultant injuries were directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendant City of New York, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, subject to prosecution by the BDAO, namely:

A.   The institution and implementation of plainly inadequate or unlawful polices, procedures, regulations, practices and/or customs concerning:

i.   The duty not to use false, misleading, or unreliable evidence, testimony, statements or argument during criminal proceedings, including bail hearings.

ii.   The continuing duty to obtain, to preserve, and to make timely disclosure to appropriate parties, including the court and the defense, during criminal investigations and prosecutions, of all material evidence or information favorable to a person suspected, accused or convicted of criminal conduct, including exculpatory evidence as well as evidence impeaching the credibility or undercutting the reliability of prosecution witnesses, and including verbal as well as recorded information

B.   The failure to adequately instruct, train, supervise, and discipline their employees with respect to such matters.

116.   The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs (including the failure to properly instruction, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by

---

3. Exhibit "A" contains cases either explicitly finding constitutional violations or finding violations under State law of *Rosario* or discovery violations that amounted to *Brady* violations.  In the State law decisions, the appellate court did not need to reach the *Brady* issue, but the violations were constitutional in nature nonetheless.

policymaking officials for the CITY, including, but not limited to, the District Attorney of Kings County and his delegates, who knew:

A.  To a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

B.  That such issues either present employees with difficult choices of the sort that instruction, training, and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of employees mishandling such situations as well as the incentives that employees have to make the wrong choice; and

C.  That the wrong choice by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of an accused and cause him constitutional injury.

117.  The aforementioned policymaking officials had the knowledge alleged in the preceding paragraph, based upon, among other circumstances:

A.  Numerous credible allegations, may substantiated by judicial decisions, that police officers and ADA's, had wrongfully withheld, evidence favorable to the defense that the prosecution had been required to timely disclose to the defense under *Brady*, had presented or failed to correct false or misleading testimony and argument;

B.  Civil lawsuits, some of which resulted in substantial civil settlements, alleging that police and/or ADAs had withheld evidence, thereby wrongfully injuring individuals suspected or accused of crime;

C.  Numerous decisions of the United States Supreme Court, the United States Court of Appeals for the Second Circuit, the New York Court of Appeals, and

the New York Appellate Divisions, discussing the difficult issues that regularly arise under the *Brady* rule and the failures of New York City or Brooklyn prosecutors to comply with that rule;

D.   Judicial decisions putting the KCDAO on notice that the CITY could be held liable for its failure to adequately train, supervise, or discipline ADAs regarding their *Brady* and related due process obligations, including their obligations not to abuse judicial process or coerce false or unreliable statements and testimony, *see, e.g. Walker v. City of New York,* 974 F.2d 293 (2d Cir.1992); *Ramos v. City of New York*, 285 A.D.2d 284, 729 N.Y.S.2d 678, 692-96 (1st Dept, 2001), *Leka v. City of New York*, 04 CV 8784 (DAB), and *Zahrey v. City of New York*, et al, 98 Civ. 4546 (DCP);

E.   The inherent obviousness of the need to train, supervise and discipline ADAs in their aforementioned constitutional obligations to counteract the inherent pressure on prosecutor to obtain convictions.

118.  Despite this knowledge, the supervisory and policymaking officers and officials of the CITY perpetuated, or failed to take preventative or remedial measures to terminate, said policies, procedures, regulations, practices and/or customs, did not effectively instruct, train and/or supervise their personnel with regard to the proper constitutional and statutory requirements in the exercise of their authority, had no employee handbook or other published practices, policies or procedures for investigating and disciplining prosecutors who had engaged in *Brady* violations and related constitutional violations, and did not discipline or otherwise properly supervise the individual personnel who engaged in such practices, but instead sanctioned or tolerated the policies, procedures, regulations, practices and/or customs, described above, with deliberate indifference to the effect of said policies, procedures, regulations, practices and/or customs upon the constitutional rights of residents and citizens of the City of the State of New York, including Plaintiff, RONALD BOZEMAN.

119. The aforesaid policies, procedures, regulations, practices and/or customs of CITY were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiff's rights under the Constitution of Laws of the United States and in causing his damages.

120. Under the principles of municipal liability for federal civil rights violations, the District Attorney of Kings County (or his authorized delegates) has final managerial responsibility for training, instructing, supervising and disciplining attorneys and other employees in his office regarding their conduct in the prosecution of criminal matters, including, but not limited to, make timely disclosure of exculpatory evidence or *Brady* material to the defense, and to refrain from offering, and to correct, false or misleading evidence, testimony, and argument during pretrial, trial proceedings.

121. The Kings County District Attorney, personally and/or through his authorized delegates, at all relevant tines had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision and discipline, with respect to his Office's performance of its duties.

122. The District Attorney of Kings County at all relevant times was and is an elected officer of Kings County, one of the constituent counties of the  CITY, and the Office was and is funded out of the CITY's budget.

123. Furthermore, the District Attorney was is designated a "local officer," rather than a "state officer" under the New York Public Officers Law (§2); and New York has provided by statue (N.Y County Law §§53,941) that the CITY's constituent counties (including Kings County), and hence the CITY itself, shall have liability for torts committed by County officers and employees, such as the District Attorney and his assistants.

22

## FIFTH CAUSE OF ACTION
## LIABILITY OF THE CITY OF NEW YORK
## FOR CONSTITUTIONAL VIOLATIONS

124.   The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

125.   At all times material to this complaint, defendant CITY, acting through its police department and through the KCDAO, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

126.   At all times material to this complaint, defendant CITY, acting through its police department and through the KCDAO, and through the individual defendants and other employees, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees, police officers and prosecutors, and of failing to inform the individual defendants' and other employees' supervisors of their need to train, screen, supervise or discipline said defendants and employees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

127.   At all times material to this complaint, defendant CITY, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

128.   Over a long period of time the KCDAO has engaged in a pervasive  pattern of misconduct designed and practiced to systematically and with deliberate indifference deny basic rights to defendants under statutes and the Constitutions of the United States and the State of New York.

23

129.    Over a period of time the KCDAO has engaged in an unlawful office-wide policy, culture and practice of aggressively flaunting the Constitutions of the United States and the State of New York by withhold *Brady* material to criminal defendants including the plaintiff herein.

130.    The conduct of the NYPD and the KCDAO in the within case is part of ongoing pattern of corruption, indifference and ineptitude that is the result of a system-wide lack of proper training, guidance and supervision.

131.    As a result of the foregoing, plaintiff was deprived of his liberty, experienced injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured

## SIXTH CAUSE OF ACTION
## ON BEHALF OF DORIS BOZEMAN

132.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

133.  That at all the times hereinafter mentioned, DORIS BOZEMAN was and still is the lawful wedded wife of the plaintiff, RONALD BOZEMAN. providing her husband, with maintenance, support, bed, board, and consortium.

134.    That as a result of the negligence of the defendants as is more fully set forth hereinabove, and without want of care on the part of this plaintiff, this plaintiff was caused to be damaged by reason of having lost the services, society and consortium of her spouse for a considerable period of time, and further by reason of the fact that this plaintiff was caused to and did expend or become obligated for divers sums of money for the purpose of obtaining for her spouse legal and medical care and attention in an effort to alleviate and/or cure some of the ills and disabilities suffered by him, and upon information and belief, this plaintiff may still suffer continued similar loss, expense and deprivation indefinitely into the future.

**WHEREFORE:**

Plaintiff, RONALD BOZEMAN, demands judgment against the defendants and demands:

A.   compensatory damages in a sum not to exceed the sum of 5 Million Dollars;

B.   punitive damages in a sum not to exceed the sum of 10 Million Dollars;

Plaintiff , DORIS BOZEMAN, demands judgment against the defendants and demands:

C.   compensatory damages in a sum not to exceed the sum of 1 Million Dollars;

and for reasonable attorneys' fees together with costs and disbursements pursuant to 42 USC §1988 and to the inherent powers of this Court; for prejudgment interest as allowed by law; and for such other and further relief as to this Court seems just and proper.

DATED:      New York, New York
            July 10, 2013

                            Yours, etc.,


                            _____
                            STEPHAN H PESKIN (SP5433)
                            TOLMAGE, PESKIN, HARRIS & FALICK
                            Attorneys for Plaintiff
                            Office and P.O. Address
                            20 Vesey Street - Suite 700
                            New York, New York 10007
                            (212) - 964-1390
                            File No.: 10832

STATE OF NEW YORK          )
                           ) SS:
COUNTY OF NEW YORK   )


      RONALD BOZEMAN, being dully sworn, deposes and says: I am one of the plaintiffs in the within action,  I have read the foregoing FIRST AMENDED COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein to be alleged on information and belief, and as to those matters I believe it to be true.


RONALD BOZEMAN


Sworn to before me this
10th day of July, 2013

_____
    Notary Public

      STEPHAN H. PESKIN
   Notary Public, State of New York
      No. 02PE8337460
    Qualified in New York County
Commission Expires February 28, 20